284 So.2d 621 (1973)
Jack E. CLARK, d/b/a Clark's Frosty, et al., Plaintiffs-Appellees,
v.
CENTRAL LOUISIANA ELECTRIC CO., INC., Defendant-Appellant.
No. 4341.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1973.
Stafford, Pitts & Stafford, by John L. Pitts, Alexandria, for defendant-appellant.
Hall, Raggio & Farrar by Frederick L. Cappel, Lake Charles, for plaintiffs-appellees.
Before CULPEPPER, MILLER and PONDER, JJ.
MILLER, Judge.
Defendant Central Louisiana Electric Company, Inc. appeals the award of damages compensating for an electrical fire loss at Clark's Frosty owned by plaintiff Jack E. Clark and insured by plaintiff Aetna Insurance Company. Aetna paid the loss less the deductible and both Aetna and Clark obtained the judgment against Cleco. Cleco contends that the trial court was manifestly wrong in its factual determination that Cleco's negligence was the cause *622 in fact of the injury to Clark's establishment. We affirm.
On the day of the fire there was a strong gusty wind, but no rain or lightning. The electrical fire was confined to an area near several electrically powered machines used in Clark's business. The electric motors to all machines which were grounded to the cold water pipe system were burned out and the electric wires serving all these machines were scorched. None of the circuit breakers were tripped. The electrical equipment and wiring which was not grounded to water pipes did not suffer electrical damage.
Electrical service to Clark's Frosty was provided by Cleco. The pole servicing Clark, had, at the time of the fire and for several months thereafter, a broken lightning arrestor cap. This device was attached to a ground wire which proceeded down the pole to a ½" or 5/8" ground rod. Cleco admitted that a dangling wire which held the broken lightning arrestor cap had come into contact with one of the three 2400 volt wires which could carry electric current at the pole. This dangling wire was attached to the loose portion of the broken lightning arrestor cap at the pole and, as noted, was grounded at the service pole. There was another ground at the service entrance to Clark's Frosty and a third ground at the water pipes in Clark's Frosty. Only the damaged machines were grounded to this same water pipe system.
Cleco stipulated that it was responsible for maintenance of its electrical transmission and service lines at its pole. Cleco does not seriously contend that it was not under a duty to maintain the pole in a safe condition and to frequently inspect the condition of its facilities. Cleco defends entirely upon the premise that the fire had no causal relationship to the condition created by the dangling lightning arrestor cap and wire.
Cleco established that their primary distribution system was a 2400 volt three wire delta system containing three live lines and no ground line as such. Under this system it is impossible for electricity to flow to ground when only one of the three lines is grounded. When one line is grounded the system then converts to a wye system with the two remaining 2400 volt transmission lines carrying the load while the third line acts as a neutral or ground wire. Cleco contends that if one of their three lines had been grounded prior to the dangling wire incident, then their instantaneous circuit breakers would have disconnected the service to about one-third of DeQuincy. There was no evidence to suggest that there was such an interruption in service on that day. Alternatively, Cleco contended that the ground wire and rods at the pole and at the service entrance to Clark's Frosty would have taken the entire 2400 volt surge. Finally, Cleco suggested that independent of an abnormal surge of electricity from the main power lines, improper wiring in Clark's Frosty could account for damage limited to the machines grounded to the water pipe.
Cleco's proof of causation consisted primarily of the testimony of five expert witnesses, one of whom was an independent consulting electrical engineer and four of whom were Cleco employees. To prove their statements that a three wire delta transmission system would not convey power to a ground wire when one line is grounded, Cleco set up an experiment at a substation in Pineville. Under similar load conditions, a grounded wire carried no voltage to ground. They admit however that if one of the three lines was grounded, then the touching of another of the three transmission lines would carry electricity. But it was indicated that such an incident would cause an instantaneous cut-off of one-third of the service to DeQuincy.
Cleco's experts also testified that if there had been a surge of electricity to the *623 ground wire, the low electrical resistance measured at the ground wire located on the service pole next to Clark's Frosty would support their contention that the surge of 2400 volts would have flowed to the ground at the pole and would not have reached the water pipe. There was no experiment to support this contention. It was generally agreed that electricity will seek the route of least resistance and that a metallic water system offers least resistance.
To support their third contention that improper wiring at Clark's Frosty could account for all damage, one engineer presented a diagram to explain his theory. Plaintiffs did not attack the theory but showed that none of Cleco's employees or experts checked the wiring or knew anything about the wiring in Clark's Frosty.
The trial court rejected Cleco's arguments and held that the electrical fire was caused by the malfunction at the pole owned and serviced by Cleco; that because of their negligence in failing to remove the dangling wire and the broken cap of the lightning arrestor, a 2400 volt surge of electricity traveled through the neutral wire; that the surge sought the line of least resistance; that part of the surge went to ground at the service pole, part at the service entrance and the remainder did the damage in Clark's Frosty on its way to the ground of least resistancethe water pipe; and that this caused the electrical damage to the machines and the resulting fire. The trial court noted that the neutral ground does not travel through the meter or through the circuit breakers and was impressed by the fact that there was no damage to the electric meter and that Clark's circuit breakers were undamaged and not tripped.
Clark's experts testified that the gusty wind condition could have caused a brushing of one of the live transmission wires of 1/100 second duration and that would be sufficient to cause the damage in the manner described above. Cleco's principal attack on the credibility of Clark's experts was the fact that they thought that the transmission system was a wye system and did not know that it was a three line delta transmission system. But this fact did not change their theory as to the manner in which the damage occurred. A delta system is converted to a wye system when one of the three transmission lines becomes grounded. One of Cleco's employees indicated that the dangling wire and lightning arrestor cap was lodged against one of the three transmission lines a few months after the incident. He cut it down because he was afraid it might "cause more trouble." Under the existing gusty wind conditions, the brushing of either of the other two transmission lines at any point in the system (serving one-third of DeQuincy) could cause some strange results.
This possibility was established by testimony of several of Clark's neighbors that their lights blinked at about that time. This loss of power might have occurred for a sufficient period to authenticate plaintiffs' theory as to the manner in which the fire occurred. Another Cleco employee indicated that when high voltage electricity gets out of control, it can bring about some strange conclusions.
While Cleco points to a lack of information on the part of Clark's experts concerning the distribution system, it was also established that Cleco's experts had no knowledge concerning the wiring system in Clark's Frosty.
The trial court's finding of fact is entitled to great weight when it is based on a determination of credibility. Higginbotham v. Higginbotham, 270 So.2d 247 (La.App. 1 Cir. 1972). While the exact cause of the electrical fire is not entirely free from doubt, we are unable to find manifest error in the trial court's factual determination. Clark established that it is more probable than not that the damages were caused by Cleco's negligence. That is sufficient to support his recovery. Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963).
*624 The parties agree that the quantum awarded was proper.
The trial court judgment is affirmed at appellant's costs.
Affirmed.